| | |
|---|---|
| KEVIN WYMORE,<br>    Plaintiff,<br>v.<br><br>CITY OF CEDAR RAPIDS, IOWA, and TIFFANY O'DONNELL, Mayor of the City of Cedar Rapids, Iowa, in her individual and official capacities.<br>    Defendants. | No. 1:22-CV-66<br><br>COMPLAINT |

## Parties, Jurisdiction, and Venue

1.    Plaintiff Kevin Wymore is an adult resident and taxpayer of the City of Cedar Rapids, Iowa.

2.    Defendant City of Cedar Rapids, Iowa is a municipality of the State of Iowa with its administrative offices located at 101 First Street SE, Cedar Rapids, Iowa 52401. Defendant Mayor Tiffany O'Donnell is the Mayor of Cedar Rapids. She is sued in her individual and official capacities.

3.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. The Court has authority to issue a declaratory judgment, to order injunctive relief, and provide other necessary and proper relief under 28 U.S.C. §§ 2201 and 2202.

1

4.      Venue in this Court is appropriate under 28 U.S.C. § 1391.

## Factual Background

5.      On February 9, 2021, the City of Cedar Rapids adopted an ordinance establishing an independent Citizen Review Board. The board consists of nine members appointed by the Mayor to staggered three-year terms. The ordinance is found at Chapter 74 of the Cedar Rapids Municipal Code.

6.      The board is granted power by the ordinance to "require, receive and review" quarterly reports from the Chief of Police, including reports on racial and ethnic data of traffic stops by police officers; serve on the committee to select candidates for police chief; monitor complaints about police officers; engage in community outreach; and engage in long-term planning for the city's delivery of police services to its residents.

7.      The ordinance defines the process for the board to receive complaints about police officers. The Chief of Police is required to investigate those complaints and report in writing to the board. The board has the power to request additional investigation of any complaint or to disagree with the chief's proposed resolution of the complaint and provide recommendations about the board's preferred outcome. If the Chief of Police and the board cannot agree on the disposition of a complaint, the board has the authority to "remand the case to the State of Iowa Office of Ombudsman, the Iowa Civil Rights Commission, or a non-governmental independent arbiter

approved by both the CRB and the City Council and request an independent

investigation."

8.    If the board disagrees with the Chief's proposed disciplinary action in

response to a complaint it can recommend alternative discipline and require the Chief

to respond in writing why he does not agree with the board's proposal.

9.    The ordinance gives the board the authority to issue a public report about

the resolution of any complaint.

10.    The ordinance implements express racial discrimination in the

composition of the board.

11.    The ordinance requires voting members of the board to "include a

minimum of five (5) voting members who identify as people of color." (C.R. Municipal

Code 74.02(A)(1)(a)).

12.    In addition to an overt racial quota, the ordinance uses proxies for racial

discrimination in that "Three (3) voting members will be selected from applications

submitted by individuals who are employed by, or active volunteers in a group with a

designation pursuant to Iowa Code Section 501(c)(3) (2020), as amended from time to

time, and that is focused on advocacy of, and racial justice for, underrepresented

citizens of Cedar Rapids, including, but not limited to: NAACP (National Association

for the Advancement of Colored People), LULAC (League of United Latin American

Citizens), Iowa Asian Alliance, ASJ (Advocates for Social Justice), United We March

Forward, with a limit of one (1) member per organization…" (C.R. Municipal Code 74.02(A)(1)(b)(iii)).

13.     In addition to these two categories of members, the ordinance requires that one member of the board will be an attorney and three members "will be selected from applications submitted by the general public." (C.R. Municipal Code 74.02(A)(1)(b)(i) and (ii)).

14.     Plaintiff lives in Cedar Rapids after retiring from service as a public health analyst for the State of Wisconsin. He holds a master's degree in public policy from the University of Minnesota Humphrey Institute of Public Affairs. He is active in his community. He frequently attends meetings of the City of Cedar Rapids City Council and Citizen Review Board and the Cedar Rapids Community School District Board. He is also active in his church where he volunteers to teach English as a Second Language classes to adults who have recently come to the United States from West Africa. He meets all qualifications to be appointed to the board. He is white.

15.     Plaintiff had followed the public discussion in the City of Cedar Rapids when the board was proposed. He attended several City Council meetings on the subject. When the draft ordinance included racially discriminatory provisions about its membership, he made comments at a public meeting warning the City Council that such an ordinance would be unconstitutional. Plaintiff specifically referred to the threat a lawsuit being filed against the City of Madison, Wisconsin challenging similarly

4

discriminatory provisions in its police review board ordinance. The City of Madison, upon being challenged for its ordinance, promptly agreed to amend it to eliminate the racially discriminatory provisions.

16. Plaintiff applied for a position on the board when its members were originally selected in May of 2021. He was not selected for a position on the board.

17. After not being selected, plaintiff happened to encounter Cedar Rapids Mayor Brad Hart (the predecessor to Mayor O'Donnell) at an event. Plaintiff asked Mayor Hart why he had not been selected for the board. Mayor Hart indicated to plaintiff that "there were only a few spots for the general public" on the board. Plaintiff understood this comment to mean that as a white individual he was not considered for the five positions on the board reserved for persons of color.

18. In January 2022 plaintiff applied for two vacancies on the board caused by persistent nonattendance by members. Plaintiff's application was rejected a second time. A city employee told him in an email he was not considered by Mayor O'Donnell because he had no experience working with or volunteering with an organization that serves underserved populations.

### Count I – The City's Ordinance Violates the Constitutional Guarantee of Equal Protection

19. The Civil Rights Act of 1871, later codified at 42 U.S.C. § 1983 and as interpreted by the U.S. Supreme Court, provides that cities "shall be liable to the party

5

injured in an action at law, suit in equity, or other proper proceedings" for the

"deprivation of any rights, privileges, or immunities secured by the Constitution."

20.     The Fourteenth Amendment to the Constitution guarantees the right to

"the equal protection of the laws." Under this guarantee, "any official action that treats

a person differently on account of his race or ethnic origin is inherently suspect." *Fisher*

v. *Univ. of Texas at Austin*, 570 U.S. 297, 310 (2013).

21.     "A racial classification, regardless of purported motivation, is

presumptively invalid and can be upheld only upon an extraordinary justification." *Pers.*

*Adm'r of Massachusetts* v. *Feeney*, 442 U.S. 256, 272 (1979) (citing *Brown* v. *Board of Ed. of*

*Topeka, Kans.*, 347 U.S. 483 (1954)).

22.     It makes no legal difference that the racial discrimination imposed by the

City of Cedar Rapids might be claimed to be benign or motivated by "good" reasons.

"The Constitution does not permit race-based government decisionmaking simply

because a school district claims a remedial purpose and proceeds in good faith with

arguably pure motives." *Parents Involved in Community Schools* v. *Seattle School Dist. No. 1*,

551 U.S. 701, 751 (2007) (Thomas, J., concurring). "The Constitution abhors

classifications based on race, not only because those classifications can harm favored

races or are based on illegitimate motives, but also because every time the government

places citizens on racial registers and makes race relevant to the provision of burdens

or benefits, it demeans us all." *Id.* at 752.

Case 1:22-cv-00066-CJW-KEM   Document 1   Filed 07/08/22   Page 6 of 9

23.     "Any person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." *Adarand Constructors, Inc.* v. *Peña*, 515 U.S. 200, 224 (1995).

24.     Under the ordinance, individuals who do not identify as people of color are categorically excluded from consideration for five of the nine positions on the board.

25.     Under the ordinance, individuals who are not members of certain groups, the membership of which act as a proxy for race, are categorically excluded from consideration for at least three of the nine positions on the board.

26.     The Mayor's appointments to the board are tainted by the ordinance's overt racial discrimination.

27.     The defendants cannot establish that the racial classification in the ordinance is narrowly tailored to remedy a compelling governmental interest.

28.     The plaintiff was harmed by the operation of the ordinance and the Mayor's appointment authority under it because he was excluded from consideration from a majority of the positions on the board and was not appointed to the board.

29.     The ordinance deprives the plaintiff of his right under the Fourteenth Amendment to the equal protection of the laws.

## Request for Relief

The plaintiff requests the Court grant the following relief:

A.      Declare that Cedar Rapids Municipal Ordinance 74.02(A)(1)(a) and (b)(i) and (ii) violates the United States Constitution.

B.      Enjoin the defendants from using an applicant's membership in a racial group as a requirement for serving on the board.

C.      Order the City of Cedar Rapids to disband the board and reconstitute its membership without regard to any applicant's membership in a racial group.

D.      Order that an independent monitor be appointed, at the expense of the defendants, to supervise the actions of the City of Cedar Rapids to ensure that it does not engage in further racial discrimination.

E.      Award plaintiff any damages that he is entitled to under 42 U.S.C. § 1983, including nominal, compensatory, and punitive damages.

F.      Award attorney fees, costs, and any other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Alan R. Ostergren
**Alan R. Ostergren**
President and Chief Counsel
THE KIRKWOOD INSTITUTE, INC.
500 Locust Street, Suite 199
Des Moines, Iowa 50309
(515) 207-0134
alan.ostergren@kirkwoodinstitute.org