| | |
|---|---|
| KEVIN WYMORE,<br><br>PLAINTIFF,<br><br>v.<br><br>CITY OF CEDAR RAPIDS, IOWA and TIFFANY O'DONNELL, Mayor of the City of Cedar Rapids, Iowa in her individual and official capacities.<br><br>DEFENDANTS. | NO. 1:22-CV-66<br><br>**BRIEF IN SUPPORT OF DEFENDANTS' RESISTANCE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Defendants City of Cedar Rapids, Iowa, and Tiffany O'Donnell (collectively "Defendants") submit this Brief in Support of their Resistance to Plaintiff's Motion for Preliminary Injunction.

**TABLE OF CONTENTS**

I. Introduction and Relevant Facts……………………………………………………1

II. Argument……………………………………..…………………………………..2

    A. Standards and Burden of Proof……………………………………………………2

    B. Plaintiff Cannot Establish Likelihood of Success on the Merits……..…………...3

    C. Plaintiff Cannot Establish Irreparable Harm…………………………...………..5

III. CONCLUSION……………………………………………………………...………6

**I.    INTRODUCTION & RELEVANT FACTS**

On February 9, 2021, the City of Cedar Rapids (the "City") adopted Chapter 74 of the Cedar Rapids Municipal Code ("Chapter 74") establishing an independent Citizen Review Board ("CRB") for community law enforcement. *See* Exhibit A, which is attached hereto and

1

incorporated herein by this reference.  Chapter 74 became effective after its passage and publication as provided by law.  *See* Exhibit A attached hereto.  Pursuant to Cedar Rapids Municipal Code section 74.02(a)(3), the CRB consists of nine voting members who serve for staggered three-year terms without compensation.  *See* Exhibit A attached hereto.

Plaintiff's Motion for Preliminary Injunction (the "Motion") seeks a preliminary injunction barring Defendants from enforcing a portion of Chapter 74, specifically Cedar Rapids Municipal Code section 74.02(A)(1)(a) ("Section 74.02(A)(1)(a)"), during the pendency of this case.  Section 74.02(A)(1)(a) provides that voting members of the CRB will be selected in conformance with the requirement that "[t]he overall membership of the CRB will include a minimum of five (5) voting members who *identify as* people of color."  *See* Exhibit A attached hereto (emphasis added).  The CRB currently has no vacancies and the earliest any of the current member's terms expire is June 30, 2023.  *See* Declaration of Alissa Van Sloten, which is attached hereto as Exhibit B and incorporated herein by this reference.  The City is currently in the process of amending Section 74.02(A)(1)(a) and anticipates that amendment will be complete prior to the end of any of the current CRB member's terms.

## II.     ARGUMENT

### A.     Standards and Burden of Proof

"Preliminary injunctive relief is an extraordinary remedy, and the party seeking such relief bears the burden of [proof]."  *Little Rock Fam. Plan. Servs.,* 397 F. Supp. 3d 1213, 1260 (E.D. Ark. 2019).  The Eighth Circuit laid out the factors to be considered in determining whether a preliminary injunction should issue in the *Dataphase* case.  *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981).  The *Dataphase* factors are:

> (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction

will inflict on other parties litigant; (3) the probability that movant
will succeed on the merits; and (4) the public interest.

*Id.* However, as one court has noted, in 2008:

> The Eighth Circuit revised the *Dataphase* test when applied to challenges to laws passed through the democratic process. Those laws are entitled to a "higher degree of deference." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). In such cases, it is never sufficient for the moving party to establish that there is a "fair chance" of success. Instead, the appropriate standard, and threshold showing that must be made by the movant, is "likely to prevail on the merits." *Id.* Only if the movant has demonstrated that it is likely to prevail on the merits should the Court consider the remaining factors. *Id.*

*Little Rock Fam. Plan. Servs.,* 397 F. Supp. 3d at 1260. This case involves a challenge to a municipal law that was passed through the democratic process and, therefore, the more stringent "likely to prevail on the merits" test applies to the Motion. Plaintiff appears to concede this fact. *See* Plaintiff's Brief in Support of the Motion, p. 8 (arguing that Plaintiff is "likely to succeed on the merits of his claim").

### B. Plaintiff Cannot Establish Likelihood of Success on the Merits

Plaintiff's contention that he is likely to succeed on the merits of his claim is premised upon his assertion that Section 74.02(A)(1)(a) contains a classification based upon race. This assertion is not accurate. Section 74.02(A)(1)(a) provides that the CRB will include five members who *identify as* people of color – it contains no requirement that any of the CRB members actually *be* people of color.[1] A person can identify as a person of color without actually being a person of color and vice versa. To the extent Section 74.02(A)(1)(a) creates a

---

[1] This distinguishes Section 74.02(A)(1)(a) from the City of Madison, Wisconsin ordinance Plaintiff appears to believe is relevant and references in both his Complaint and his Brief in Support of the Motion. Upon information and belief, the Madison, Wisconsin ordinance required a particular number of its oversight board members to be African American, Asian, Latinx, Native American and Black. Regardless, the Madison, Wisconsin ordinance, and actions taken by the City of Madison in relation to that ordinance, are not relevant to this matter.

3

classification, it is a classification based upon identity, not race. Identity is not a suspect or even quasi-suspect class[2] and Plaintiff has not alleged any sort of fundamental right is involved in this matter (nor could he, as there is no fundamental right to serve on a municipal board). Therefore, the standard of review for Plaintiff's equal protection challenge to Section 74.02(A)(1)(a) is rational basis review and Plaintiff cannot succeed on the merits of his claim under that standard. *See Hughes v. City of Cedar Rapids, Iowa,* 840 F.3d 987, 996 (8th Cir. 2016)*("*When no fundamental right or suspect class is at issue, a challenged law must pass the rational basis test.").

      The Eighth Circuit has summarized rational basis review as follows:

> In rational basis review, "legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)"It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563, (1955).

*Hughes,* 840 F.3d at 996. A law examined under rational basis review "must be upheld against equal protection challenge if there is any reasonably conceivable set of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. at 313.

      Cedar Rapids Municipal Code section 74.01(A) ("Section 74.01(A)") lays out eight different legitimate government interests the City sought to further with passage of Chapter 74, and the City acted rationally in concluding that Section 74.02(A)(1)(a) would further many of those interests. For example, subsection 6 of Section 74.01(A) provides that one of the purposes of the CRB is "to assist in identifying and analyzing trends in policing whose origins may be rooted in bias or other systematic phenomena, and upon discovery of these trends, to assist the

---

[2] Even if identity were a quasi-suspect class, Section 74.02(A)(1)(a) would survive intermediate scrutiny.

City and the Cedar Rapids Police Department…in developing solutions to ensure the fair and equitable treatment of citizens[.]" Individuals who identify as people of color may be better suited to identify trends rooted in bias than individuals who do not identify as people of color and, therefore, Section 74.02(A)(1)(a)'s requirement that the CRB contain some members who identify as people of color is rationally related to this legitimate government interest.

### C. Plaintiff Cannot Establish Irreparable Harm

Plaintiff has not alleged any facts that establish he will be irreparably harmed if the Motion is not granted. Even if the Court were to find Plaintiff established the other three *Dataphase* factors, the absence of irreparable harm defeats the Motion. *See Dataphase*, 640 F.2d at 115, n.9 (stating "[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction.").

The purpose of a preliminary injunction is to preserve the status quo until the trial on the merits. *Little Rock Fam. Plan. Servs.,* 397 F. Supp. 3d at 1260 ("The focus is on 'whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the *status quo* until the merits are determined.'" (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). Given that the CRB currently has no vacancies and the earliest any of the current member's terms expire is June 30, 2023, a preliminary injunction is not necessary to preserve the status quo at this time. *Cf.* Exhibit B attached hereto. Although it is possible a CRB member will leave the CRB prior to the end of their term, it would be pure speculation to say that will happen, or when that will happen, at this time. Moreover, the City is currently in the process of amending Section 74.02(A)(1)(a) and anticipates that amendment will be complete prior to the expiration of any of the current CRB member's terms. There is simply no need for the preliminary injunction Plaintiff requests because no new appointments to the CRB are set to happen until June 30, 2023,

and the particular Code provision of which the Motion seeks to bar enforcement will no longer be in existence at that time.

## III. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court deny Plaintiff's Motion for Preliminary Injunction and grant such other relief as the Court deems appropriate.

/s/Patricia G. Kropf
Patricia G. Kropf
AT0009364
City Hall
101 First Street SE
Cedar Rapids, IA 52401
(319) 286-5025
(319) 286-5135 fax
Email: t.kropf@cedar-rapids.org

**ATTORNEY FOR DEFENDANTS**

Copies to:

**Alan R. Ostergren**
President and Chief Counsel
THE KIRKWOOD INSTITUTE, INC.
500 Locust Street, Suite 199
Des Moines, Iowa 50309

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on September 23, 2022.

By: ___U.S. Mail __FAX
___Hand Delivered __Overnight Courier
___Certified Mail _X_ Other (EDMS)
___ CM/ECF __Email

Signature /s/ Wendy E. Howard

ORDINANCE NO. 003-21

AN ORDINANCE AMENDING THE CEDAR RAPIDS MUNICIPAL CODE
BY ADDING A NEW CHAPTER 74 THERETO ENTITLED
"CITIZEN REVIEW BOARD FOR COMMUNITY LAW ENFORCEMENT"

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CEDAR RAPIDS, IOWA, as follows:

Section 1. The Cedar Rapids Municipal Code is amended by adding a new Chapter 74 as follows:

"**CHAPTER 74**

**CITIZEN REVIEW BOARD FOR COMMUNITY LAW ENFORCEMENT**

**74.01  DECLARATION OF PURPOSE AND INTENT.**

(A)  The City of Cedar Rapids (hereinafter the "City") establishes the Cedar Rapids Citizen Review Board (hereinafter the "CRB") that will be sufficiently independent for the following purposes:

(1) To ensure fair and professional law enforcement that is constitutional, effective, and responsive to the standards, values, and needs of those to be served;

(2) To ensure investigations into claims of inappropriate conduct by sworn police officers are conducted in a manner that is fair, thorough, and accurate;

(3) To provide review of police investigations into citizen complaints;

(4) To ensure accountability with respect to complaints of officer misconduct;

(5) To ensure public safety accountability, bolster confidence in police, increase and improve public cooperation, and make our community safer for everyone;

(6) To assist in identifying and analyzing trends in policing whose origins may be rooted in bias or other systematic phenomena, and upon discovery of these trends, to assist the City and Cedar Rapids Police Department (hereinafter referred to as the "CRPD") in developing solutions to ensure the fair and equitable treatment of citizens;

(7) To increase citizens' understanding of law enforcement policies, procedures, and operations through additional transparency created through the complaint and investigations review process; and

(8) To create an additional conduit for communication between the CRPD and the Cedar Rapids community through outreach to community and law enforcement.

(B) In enacting this ordinance the Cedar Rapids City Council (hereinafter the "City Council") intends that:

(1) Internal accountability within the CRPD is a valid public purpose, and the CRPD should perform its own investigations into claims of inappropriate police conduct. If a complaint is asserted against the Cedar Rapids Chief of Police (hereinafter

the "Chief" or the "Police Chief"), the City Manager will investigate the claim and report to the CRB as the Chief would pursuant to this chapter, and to the City Council.  An allegation of misconduct lodged against a sworn police officer (hereinafter "police officer" or "officer") employed by the CRPD, where the subject action(s) and/or behavior(s) of the complaint occurred while the officer was acting in the capacity of a sworn police officer and submitted as a written complaint signed by a complainant or a written statement by an officer receiving an oral complaint stating the complainant's allegation may hereinafter be referred to as a "complaint."  Actions or behaviors not in conformance with current CRPD policies and procedures may hereinafter be referred to as "misconduct;"

(2) Findings of the CRB are intended to be used only as provided for in this chapter.

(3) The CRB may only review complaints about the conduct of police officers.  The CRB is not intended to be a court of law, a tort claim process or other litigation process.  No action of the CRB may be deemed to diminish or limit the right of any person to file a claim or a lawsuit against the city;

(4) The CRB shall not interfere with or diminish the legal rights of sworn police officers, including those rights protected under the civil service laws, or any other state or federal law.  Similarly, the CRB will respect the rights of privacy and freedom from defamation shared by complainants and witnesses, as well as those same rights enjoyed by police officers under the law; and

(5) Complaints will be investigated in a fair, thorough, and accurate manner. Investigations will follow procedures outlined in the CRPD's Department Directives, as well as applicable state and federal law.

### 74.02 CEDAR RAPIDS CITIZEN REVIEW BOARD.

(A) The Cedar Rapids Citizen Review Board is hereby created.  The CRB will consist of nine (9) voting members appointed by the Mayor with input from and the approval of the City Council. Members of the CRB will serve without compensation, and be chosen to broadly represent the diversity of the City by way of, including but not limited to, cultural, gender, and geographic diversity.

(1) Voting members will be selected in conformance with the following:

a. The overall membership of the CRB will include a minimum of five (5) voting members who identify as people of color.

b. The Mayor shall appoint members of the CRB, with advice and consent from the City Council, according to the following, some combination of which will also conform to the composition standard in section 74.02(A)(1)(a):

i. Three (3) voting members will be selected from applications submitted by the general public;

ii. One (1) voting member will be an attorney licensed to practice law in the state of Iowa, although this member may not serve as legal counsel for the CRB;

2

Case 1:22-cv-00066-CJW-KEM   Document 15-1   Filed 09/23/22   Page 8 of 17
EXHIBIT A

- iii. Three (3) voting members will be selected from applications submitted by individuals who are employed by, or active volunteers in a group with a designation pursuant to Iowa Code Section 501(c)(3) (2020), as amended from time to time, and that is focused on advocacy of, and racial justice for, underrepresented citizens of Cedar Rapids, including, but not limited to: NAACP (National Association for the Advancement of Colored People), LULAC (League of United Latin American Citizens), Iowa Asian Alliance, ASJ (Advocates for Social Justice), United We March Forward, with a limit of one (1) member per organization; and

- iv. Two (2) voting members will be appointed by the Mayor from nominees who are employed by, or are active volunteers in, one of the following service providers in Cedar Rapids: United Way, a United Way funded service provider, NAMI (National Alliance on Mental Illness), or another service provider or company that works with underrepresented segments of the population in the areas of mental health, physical health, homelessness, food insecurity, or similar social issues.

(2) In addition to the composition standards set forth above, the following are the minimum qualifications for voting members of the CRB:

 a. Are not currently employed by the City of Cedar Rapids;

 b. Are not currently, and have not been, employed as a sworn law enforcement officer or employed as an unsworn employee of law enforcement for a period of four (4) years prior to appointment;

 c. Are not currently, and have not been, an elected official for a period of four (4) years prior to appointment;

 d. Do not have a personal history of making multiple unfounded formal complaints against the CRPD;

 e. Have demonstrated a strong commitment to transparency and impartial decision-making;

 f. Have demonstrated the ability to maintain confidentiality of sensitive information; and

 g. Must be Cedar Rapids residents at the time of appointment and during the term of appointment.

(3) The term of office of each member of the CRB will be 3 years. A member chosen to fill a vacancy otherwise than by expiration of a term will be appointed for the unexpired term of the member whom the new member is to succeed. A member is eligible for reappointment, but may not serve more than 2 consecutive 3-year terms. Members who miss 3 consecutive meetings or 4 meetings within 12 months will be considered to have resigned and a vacancy created. The terms of the first set of members will be staggered as follows:

 a. Three (3) members serving one (1) year terms;

 b. Three (3) members serving two (2) year terms; and

    c. Three (3) members serving three (3) year terms

  (4) If a member is unable to complete that member's term for any reason, or is unable to complete the required training outlined in subsection (B) below, the Mayor shall appoint, with input from and the approval of the City Council, a new member to complete the term.  Such new member may then be eligible to be reappointed for no more than one (1) additional full consecutive term, if the member has served eighteen (18) months or more of the original term, and no more than two (2) additional full consecutive terms, if the member has served less than eighteen (18) months of the original term.

(B) As a requirement for service, before they may be eligible for appointment, voting members of the CRB must agree to complete the following training:

  (1) Complete a training course that is a minimum of, but not limited to, thirty (30) hours with a curriculum as determined by the Chief to be completed within six (6) months of appointment;

  (2) In addition, each voting member must receive an additional ten (10) hours of training per year with a curriculum as determined by the Chief; and

  (3) Each voting member must accompany an on-duty police officer employed by the CRPD for a minimum of sixteen (16) hours per year and for a minimum of four (4) hours per occasion.

(C) Two (2) police officers will be appointed to serve by the Chief as liaisons to the CRB, ensuring at least one (1) of the officers will be available to attend all meetings with only one (1) officer in attendance in closed sessions, at the discretion of the CRB to serve as a resource. Police officer liaisons will serve as a technical resource and subject matter experts at the discretion of the CRB and serve as a communication conduit between the CRPD and the CRB. The police officers appointed by the Chief shall serve a two-year term ending on June 30 in even-numbered years, and will:

  (1) Have been a CRPD officer for more than seven (7) years;

  (2) Have participated in ethics training;

  (3) Have strong community relations experience;

  (4) Hold a rank of Sergeant or below; and

  (5) May not serve as a CRB liaison more than two (2) consecutive terms.

(D) The City Council will provide the necessary resources to allow the CRB to perform the duties and functions assigned to the CRB by this chapter.

(E) The CRB will annually elect a Chairperson and a Vice-Chairperson from among its members. The Chairperson may serve for no more than 2 consecutive 12-month periods. The Vice-Chairperson may serve for no more than 2 consecutive 12-month periods. The election of officers will be held at the first regularly scheduled meeting after the first of the year.

(F) The CRB may adopt, amend, or rescind such rules as may be necessary for the conduct of its business.

**74.03  GENERAL POWERS AND DUTIES OF THE CITIZEN REVIEW BOARD.**

The CRB will have the following powers and duties to:

(A)     Require, receive and review quarterly reports from the Chief, including data such as traffic stops and arrests with breakdowns of the attending demographic information by race and ethnicity;

(B)     Review police data to identify areas for improvement and create a baseline for each area and keep track of progress;

(C)     Appoint a member of the CRB to serve on any Police Chief Candidate selection committee, and appoint additional members of the CRB, as needed, to provide 20% representation on the committee;

(D)     Oversee a monitoring system for tracking of complaints lodged against sworn police officers with either the CRB, the CRPD, or the City Clerk to give the City Council sufficient information to assess the overall performance of the CRPD in these matters and to assess the performance of the CRB in the fulfillment of its duties;

(E)     Develop, implement, and from time to time amend as necessary, a program of community outreach aimed at soliciting public input from the broadest segment of the community in terms of geography, culture, ethnicity, and socio-economics.  The CRB will report its community outreach efforts to the City Council on an annual basis.  As a part of this program, the CRB must hold at least one community forum each year for the purpose of hearing views on the policies, practices, and procedures of the CRPD, review police practices, procedures, and written policies as those practices and procedures relate to the CRPD's performance as a whole, and report its recommendations, if any, to the City Council, City Manager and Police Chief; and

(F)     Engage in a long-term planning process through which it identifies major problems or trends, evaluates the efficacy of existing law enforcement practices in dealing with the same, and establishes a program of resulting policy suggestions and studies each year.  The CRB will review and analyze policy, analysis studies, and trend data collected or developed by the CRPD, and by majority vote, recommend policies relating to training programs and procedures or other matters related to the CRPD.  The CRB's policy recommendations will be submitted to the Chief and to the City Council. The Chief will respond in writing within 45 days to any such policy recommendations by the CRB, and indicate whether they will be followed through Department Directives or should be adopted as policy by the City Council or explain any reasons why such policy recommendations will not be followed or should not be adopted.

**74.04 CITIZEN COMPLAINTS OF ALLEGED POLICE MISCONDUCT.**

(A)     <u>Making and Filing Complaints</u>.

    (1)     Any person with personal knowledge of alleged police misconduct may file a complaint.  In order to have "personal knowledge", the complainant must have been directly involved in the incident or witnessed the incident. If a juvenile wants to make a complaint against an officer, the complaint will be taken in the same manner as if an adult filed it.  Once a complaint is taken from a juvenile, an attempt must be made to notify the juvenile's parent or guardian concerning the complaint and the circumstances involved.  This notification will be documented in the final report provided to the Chief by the Professional Standards unit of the

5

EXHIBIT A

CRPD (hereinafter referred to as "Professional Standards"). The person or official filing the complaint may hereafter be referred to as the "complainant."

(2) Complaints may be filed in person or online with the CRB, the CRPD, or the City Clerk's office. The date, time, and name of the person receiving the complaint shall be recorded on the complaint form and submitted in a timely manner to Professional Standards. Each office shall record the receipt of all Complaints and provide notice of receipt of all complaints to the others when received; and

(3) Complaint forms will be available to the public online and in easily accessible locations. Personnel in the City Clerk's Office, sworn police officers, and non-sworn police staff will be available to receive complaints. All complaints must be filed within ninety (90) days of the alleged misconduct. Any complaints that do not involve the conduct of a sworn police officer or are not filed within ninety (90) days of the alleged misconduct may be investigated by the Professional Standards unit and may be subject to summary dismissal by the CRB. If the complaint is against the Chief, the City Manager will perform the Chief's duties set forth herein below.

(B) Police Department Investigation of Complaints.

(1) The Chief will direct Professional Standards to conduct an investigation of each complaint received ("PSI"). The PSI will be conducted pursuant to the Department Directives established by the Chief, as well as the conditions herein. The Department Directives will be a public record and readily available to the community. All investigations will be performed in a manner designed to produce a minimum of inconvenience and embarrassment to all parties, including the complainant, the police officer, and other witnesses.

(2) All PSI will include an interview of the complainant. The complainant may have a neutral City employee or some other person chosen by the complainant present during the interview. Any police officer who is implicated by a complaint shall have the right to have legal counsel or a union representative present during the officer's interview.

(3) Professional Standards will prepare and forward a report of its investigation to the Chief within sixty (60) days after the complaint is filed. The PSI report will include detailed findings of fact as to the allegations in the complaint. The report will also set forth a written conclusion that explains why and the extent to which the complaint is either "exonerated" (meaning the officer acted in conformance with policies and procedures); "unfounded" (meaning the incident in question is found to have not occurred as stated by the complainant); "unsubstantiated" (meaning there is insufficient evidence to prove or disprove the complaint); "sustained" (meaning the incident in question is found to have occurred as alleged by the complainant); "commended" (meaning the officer acted properly and should be commended in the handling of the situation); or "policy failure" (meaning the officer acted in conformance with established policy, but the policy needs to be amended).

(4) The Chief will conduct a review of the PSI report and may do any or all of the following: conduct interviews or request Professional Standards to conduct additional investigation; request additional information, or that additional questions be asked; interview or direct that other persons or witnesses be interviewed; request that other documents be reviewed or retrieved; and take any other investigative steps the Police Chief deems appropriate.

(5) The Chief will forward a Police Chief's report to the CRB. The Police Chief's report will include the following:

    a. Detailed written findings of fact and evidence concerning the allegations in the complaint (names of witnesses, victims, and Police Officers will not be included and shall be replaced by unique identifiers for each of these individuals). Faces and names will be edited out of any media provided to the CRB;

    b. A written conclusion that explains why and the extent to which the complaint is either "sustained", "unfounded", "exonerated", "unsubstantiated", "commended", "policy failure";

    c. A written summary of remedial actions, if any, including amending the current policies or adopting new policies;

    d. A description of any disciplinary action recommended by the current disciplinary matrix contained within the CRPD Disciplinary System Policy issued by the Chief (hereinafter referred to as the "Disciplinary Matrix"). Nothing in this chapter will prevent the Police Chief from taking disciplinary action prior to the CRB's review of the complaint; and

    e. The Chief's certification that the PSI was conducted in conformance with the CRPD's Department Directives.

(6) A copy of the Police Chief's report to the CRB shall be given to the police officer and the City Manager;

(7) The Chief's report must be delivered to the CRB, along with findings of fact and all available evidence and audio and visual recordings, within thirty (30) calendar days after the Professional Standards report is issued to the Chief, unless the Chief demonstrates good cause for additional time; and

(C) <u>CRB Review of the Police Chief's Report</u>.

(1) The CRB will review all Police Chief's reports, or City Manager's Reports regarding complaints made against the Police Chief. The CRB may require the Chief to meet with the CRB to review and discuss the Report. To the extent possible, such meetings may be in closed session as allowed by Iowa Code Chapter 21. All CRB deliberation of the Chief's report will be discussed in a closed session with all discussions, correspondence, and minutes/records of the closed session deemed confidential documents and not released to the public. The CRB may request subject matter experts participate in the conversation during open and closed sessions, and request additional information from the Chief or other entities to supplement its review.

(2) The CRB will decide, on a majority vote, the level of review to give each Police Chief's report, and the CRB may select any or all of the following:

    a. Agree with no additional information or investigation requested;

    b. Request additional investigation by the Chief or City Manager, request additional information; and

    c. Disagree and provide recommendations to the Chief.

(3) The CRB will apply a "reasonable basis" standard of review when reviewing the Police Chief's report. When reviewing the report's evidence, the CRB will rely on evidence reasonably prudent persons are accustomed to rely upon in the conduct of their serious affairs.

(4) The CRB may recommend that the Police Chief reverse or modify the Chief's findings only if the CRB determines that:

    a. The findings are not supported by substantial evidence;

    b. The findings are unreasonable, arbitrary or capricious; or

    c. The findings are contrary to a CRPD Department Directive, or federal, state, or local law.

The Police Chief will respond in writing to the CRB's recommendations within thirty (30) days.

(5) If the CRB disagrees with the decision of the Police Chief the CRB may issue a written response to the Chief indicating on which of the three (3) standards in Section 74.04(C)(4) upon which the CRB's disagreement is based. Thereafter, the Chief will meet with the CRB to discuss the disagreement. This meeting may be closed as allowed by Iowa Code Chapter 21. Such meeting will take place prior to the issuance of the CRB's public report to the City Council. If after the CRB has met with the Chief, as outlined in this subsection, and the CRB still disagrees with the Chief's report, the CRB may on a majority vote, remand the case to the State of Iowa Office of Ombudsman, the Iowa Civil Rights Commission, or a non-governmental independent arbiter approved by both the CRB and the City Council and request an independent investigation.

(6) If the CRB finds that the disciplinary action indicated by the Police Chief, for investigations that result in sustained civilian police complaints, is out of conformance with the Discipline Matrix, the CRB may recommend other discipline that conforms with the Discipline Matrix. Imposition of the recommended discipline is at the discretion of the Chief, but if the Chief does not follow the disciplinary recommendation of the CRB, the Chief must respond in writing, within 30 days, with the Chief's reasons as to why the recommended discipline was not imposed.

(7) At the conclusion of the CRB's review, the CRB will issue a public report to the City Council concerning the investigation of the complaint. Such public report will include detailed findings of fact concerning the complaint, together with a clearly articulated conclusion that explains the disposition of the complaint. The public report will not include the names of the complainant(s), witness(es) or the police officer(s). In addition, the CRB's public report will not include any discipline or personnel matters, although the CRB may comment generally as to whether the CRB believes discipline is appropriate without commenting on the extent or form of the discipline. A copy of this public report to the City Council shall be given to the complainant(s), the police officer(s), the Police Chief, and the City Manager.

(8) The CRB's report to the City Council must be completed within ninety (90) calendar days of receipt of the Chief's report unless the CRB demonstrates good cause for additional time.

(9) Review of the Chief's report for each case by the CRB may occur after all pending investigations, legal proceedings, and any applicable appeals, grievances, or other review of the incident have been completed.

**74.05 DUTIES OF THE CITY MANAGER**

If a complaint is filed concerning the Chief, the City Manager's report will include the same findings of fact and conclusions as required for the Chief's report.

**74.06 POLICE OFFICER'S AND COMPLAINANT'S RIGHTS PRESERVED**

All rights enjoyed by sworn police officers employed by the City are preserved in this chapter, and nothing herein is intended to waive, diminish or interfere with any such rights protected by Iowa's civil service laws or any other applicable state or federal laws."

Section 2. It is the intention of the Council that each section, paragraph, sentence, clause, and provision of the Ordinance is separable and, if any provision is held unconstitutional or invalid for any reason, such decision shall not affect the remainder of this Ordinance nor any part thereof than that affected by such decision.

Section 3. All ordinances or parts of ordinances in conflict herewith are repealed.

Section 4. This Ordinance shall be in full force and effect from and after its passage and publication as provided by law.

Introduced this 26th day of January, 2021.

Passed this 9th day of February, 2021.

Voting: Council member Olson (Scott) moved the adoption of the ordinance; seconded by Council member Hoeger. Adopted, Ayes, Council members Hoeger, Loeffler, Olson (Scott), Olson (Tyler), Overland, Poe, Todd, Vanorny and Mayor Hart.

*Bradley G. Hart*
Bradley G. Hart, Mayor

Attest:

*Amy Stevenson*
Amy Stevenson, City Clerk

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA – CEDAR RAPIDS DIVISION

| | |
|---|---|
| KEVIN WYMORE,<br><br>　　　　　PLAINTIFF,<br><br>v.<br><br>CITY OF CEDAR RAPIDS, IOWA and TIFFANY O'DONNELL, Mayor of the City of Cedar Rapids, Iowa in her individual and official capacities.<br><br>　　　　　DEFENDANTS. | NO. 1:22-CV-66<br><br>**DECLARATION OF ALISSA VAN SLOTEN** |

1. I am the City Clerk for the City of Cedar Rapids, Iowa.

2. The Cedar Rapids City Clerk's office is responsible for maintaining information relating to membership on the City of Cedar Rapids' boards and commissions, including information relating to term expiration dates of current boards and commissions members and vacancies on each board and commission.

3. The Cedar Rapids Citizen Review Board ("CRB") established by Cedar Rapids Municipal Code Chapter 74 currently has no vacancies.

4. Attached hereto is an accurate list of the current CRB members and the dates on which their terms expire.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 22nd day of September, 2022.

　　　　　　　　　　　　　　　　　*Alissa Van Sloten*
　　　　　　　　　　　　　　　　　Alissa Van Sloten

| (CEDAR RAPIDS) CITIZEN REVIEW BOARD ||
|---|---|
| 3 YEAR TERMS ||
| Countryman, Tim | June 30, 2025 |
| Eddy, Aaron | June 30, 2024 |
| Kim, Arthur | June 30, 2023 |
| Messer, Stephanie | June 30, 2024 |
| Montgomery, Edwin | June 30, 2025 |
| Pierce, Allonda | June 30, 2023 |
| Smith, Starlet | June 30, 2025 |
| Snow-Watt, India | June 30, 2024 |
| Vallejo, Monica | June 30, 2023 |