UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA – CEDAR RAPIDS DIVISION

| | |
|---|---|
| KEVIN WYMORE,<br>    Plaintiff,<br>v.<br><br>CITY OF CEDAR RAPIDS, IOWA, and TIFFANY O'DONNELL, Mayor of the City of Cedar Rapids, Iowa, in her individual and official capacities.<br>    Defendants. | No. 1:22-CV-66<br><br>REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |

## Table of Contents

Table of Authorities ................................................................................................... 2

I.   Defendants mock the Constitution's guarantee of equal protection. ......... 3

II.  A preliminary injunction is appropriate even without a current
     vacancy on the police review board. ........................................................... 4

III. Conclusion. ................................................................................................... 6

# Table of Authorities

**CASES**

*Adarand Constructors, Inc.* v. *Peña*, 515 U.S. 200, 224 (1995) ...........................3

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 68 (2020)...................5

*Wygant* v. *Jackson Bd. of Educ.*, 476 U.S. 267, 273 (1986) ...................................3

**STATUTES**

Iowa Code § 21.4(2)(a) ............................................................................................5

**OTHER AUTHORITIES**

Camille Gear Rich, *Elective Race: Recognizing Race Discrimination in the Era of Racial Self-Identification*, Georgetown Law Journal Vol 102, 1501, 1520-21 (2014) ..................................................................................................................3

David E. Bernstein, *Classified: The Untold Story of Racial Classification in America* (Bombardier Books 2022) ............................................................................4

## I. Defendants mock the Constitution's guarantee of equal protection.

The City of Cedar Rapids and its Mayor (referred to collectively as "the city" in this brief) defend the police review board ordinance by pointing out the board "will include five members who *identify as* people of color – it contains no requirement that any of the CRB members actually *be* people of color." (Brief in Support of Resistance to Motion for Preliminary Injunction 3) (emphasis original). The city supplies no authority for the astonishing proposition that it may freely use a person's self-described racial identity to discriminate.

"Any preference based on racial or ethnic criteria must necessarily receive a most searching examination to make sure that it does not conflict with constitutional guarantees." *Wygant* v. *Jackson Bd. of Educ.*, 476 U.S. 267, 273 (1986). "Any person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." *Adarand Constructors, Inc.* v. *Peña*, 515 U.S. 200, 224 (1995). The city cannot save its ordinance by claiming a person's self-identified[1] race it not "based on racial or ethnic criteria" or otherwise a "racial classification" as those terms are used by *Wygant* and *Adarand Constructors*.

---

[1] Indeed, self-identification is the norm for determining an individual's race. Camille Gear Rich, *Elective Race: Recognizing Race Discrimination in the Era of Racial Self-Identification*, Georgetown Law Journal Vol 102, 1501, 1520-21 (2014) (describing history of governmental statistics and legal proceedings using racial

The city offers *nothing* to justify the racial quota in the police board membership other than breezy sophistry. It compares its use of race to its use of an automated traffic control device. (Brief in Support of Resistance to Motion for Preliminary Injunction 4) (citing *Hughes* v. *City of Cedar Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016)). And after denying the ordinance is about race, it offers that people who self-identify as people of color "may be better suited to identify trends rooted in bias than individuals who do not…" (Brief in Support of Resistance to Motion for Preliminary Injunction 4).

The city's unserious and mocking response to the motion for preliminary injunction deserves the strongest condemnation. Wymore has shown he is substantially likely to succeed on the merits.

## II. A preliminary injunction is appropriate even without a current vacancy on the police review board.

The city claims that because there is not currently a vacancy on the police review board there is no threat of irreparable harm to Wymore. (Brief in Support of Resistance to Motion for Preliminary Injunction 5). But vacancies may occur on the police review board before the end of a member's term. Wymore was passed over for two vacancies on the board that occurred in exactly this manner. (Exhibit 2 at ¶ 12).

---

self-identification). See also David E. Bernstein, *Classified: The Untold Story of Racial Classification in America* (Bombardier Books 2022).

The ordinance places no time constraints on the mayor's appointment of a replacement board member. The only step she must take is to obtain approval of the appointment by the city council. The city apparently believes Wymore should wait for a vacancy to happen and then rush to Court for a preliminary injunction before an appointment can be made and confirmed. But because the city council can meet on as little as 24 hours' notice, Iowa Code § 21.4(2)(a), Wymore would have to go to unreasonable lengths (not to mention greatly inconvenience the Court) to guard his rights. This is not required. *Roman Cath. Diocese of Brooklyn v. Cuomo,* 141 S.Ct. 63, 68 (2020) (Injunctive relief is appropriate when movant is "under a constant threat" of unconstitutional action and there may not be enough time for court intervention to prevent it.)

The city makes a passing reference that it "is currently in the process of amending [the racial quota language] and anticipates that amendment will be complete prior to the expiration of any of the current CRB member's terms." (Brief in Support of Resistance to Motion for Preliminary Injunction 5). The city provides no information about what this amendment might say. Nor does it cite authority for the proposition that it can avoid an injunction against the enforcement of an unconstitutional ordinance because of vague plans to amend it. And if the city says it intends to amend the racial quota language in response to this lawsuit, it hardly credits the claim it may freely discriminate because of racial self-identification.

### III. Conclusion.

A preliminary injunction against the enforcement of the racial quota provisions of the ordinance should be entered.

/s/ Alan R. Ostergren
**Alan R. Ostergren**
President and Chief Counsel
THE KIRKWOOD INSTITUTE, INC.
500 Locust Street, Suite 199
Des Moines, Iowa 50309
(515) 207-0134
alan.ostergren@kirkwoodinstitute.org