**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| KEVIN WYMORE, | No. 22-CV-66 CJW-KEM |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| CITY OF CEDAR RAPIDS, IOWA and TIFFANY O'DONNELL, Mayor of the City of Cedar Rapids, Iowa in her individual and official capacities, | |
| Defendants. | |

———————————————

**TABLE OF CONTENTS**

I.    BACKGROUND ............................................................................. 3

II.   PRELIMINARY INJUNCTION STANDARD ...................................... 6

III.  ANALYSIS ................................................................................... 7

      A.   Irreparable Harm .............................................................. 7

           1.   Arguments ................................................................ 8

           2.   Applicable Law ......................................................... 8

           3.   Analysis ................................................................... 9

      B.   Balance of Harms ............................................................ 10

           1.   Arguments ................................................................ 10

2.      Applicable Law ........................................................10

3.      Analysis ...............................................................11

C.      Likelihood of Success on the Merits ............................12

     1.      Arguments ...........................................................12

     2.      Applicable Law ....................................................12

     3.      Analysis ...............................................................14

         a.      Standing ......................................................14

         b.      Equal Protection Violation .......................16

D.      Public Interest .....................................................20

     1.      Arguments ...........................................................20

     2.      Applicable Law ....................................................21

     3.      Analysis ...............................................................21

IV.      CONCLUSION ...............................................................22

This matter is before the Court on plaintiff's Motion for Preliminary Injunction. (Doc. 6). Defendants timely resisted (Doc. 15), and plaintiff timely replied (Doc. 16). The Court held oral argument on October 4, 2022, during which the Court ordered supplemental briefing. (Doc. 17). Plaintiff submitted supplemental briefing on October 4, 2022. (Doc. 18). Defendants submitted their supplemental briefing on October 7, 2022. (Doc. 19).

## I.    BACKGROUND

The Court's factual findings are based on plaintiff's complaint and the parties' sworn declarations and exhibits submitted in support of their positions. The Court's factual findings here are provisional and not binding in future proceedings. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits[.]") (citations omitted); *SEC v. Zahareas*, 272 F.3d 1102, 1105 (8th Cir. 2001) (same). Affidavits submitted at the preliminary injunction phase need not meet the requirements of affidavits under Rule 56(c)(4), but courts may consider the "competence, personal knowledge and credibility of the affiant" in determining the weight to give the evidence. *Bracco v. Lackner*, 462 F. Supp. 436, 442 n.3 (N.D. Cal. 1978) (citing 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2949)). The Court will discuss additional facts as they become relevant to its analysis.

On February 9, 2021, the City of Cedar Rapids adopted an ordinance that established an independent Citizen Review Board ("the Board") to oversee certain police interactions within the community. (Docs. 6-1, at 4; 6-2). The ordinance includes provisions related to the membership requirements of the Board that, among other things, requires the Board to consist of a majority of minorities. In relevant part, Section 74.02(A)(1) provides:

(A)     The Cedar Rapids Citizen Review Board is hereby created. The CRB will consist of nine (9) voting members appointed by the Mayor with input from and the approval of the City Council.  Members of the CRB will serve without compensation, and be chosen to broadly represent the diversity of the City by way of, including but not limited to, cultural, gender, and geographic diversity.

(1) Voting members will be selected in conformance with the following:

a. *The overall membership of the CRB will include a minimum of five (5) voting members who identify as people of color.*

b. The Mayor shall appoint members of the CRB, with advice and consent from the City Council, according to the following, some combination of which will also conform to the composition standard in section 74.02(A)(1)(a):

i. Three (3) voting members will be selected from applications submitted by the general public;

ii. One (1) voting member will be an attorney licensed to practice law in the state of Iowa, although this member may not serve as legal counsel for the CRB;

iii. Three (3) voting members will be selected from applications submitted by individuals who are employed by, or active volunteers in a group with a designation pursuant to Iowa Code Section 501(c)(3) (2020), as amended from time to time, and that is focused on advocacy of, and racial justice for, underrepresented citizens of Cedar Rapids, including, but not limited to: NAACP (National Association for the Advancement of Colored People), LULAC (League of United Latin American Citizens), Iowa Asian Alliance, ASJ (Advocates for Social Justice), United We March Forward, with a limit of one (1) member per organization; and

iv. Two (2) voting members will be appointed by the Mayor from nominees who are employed by, or are active volunteers in, one of the following service providers in Cedar Rapids: United Way, a United Way funded service provider, NAMI (National Alliance on Mental Illness), or another service provider or company that works with underrepresented segments of the population in the areas of mental health, physical health, homelessness, food insecurity, or similar social issues.

4

Section 74.02(A)(1) (emphasis added).

Within the ordinance, defendants provide eight interests the ordinance purportedly serves:

> (1) To ensure fair and professional law enforcement that is constitutional, effective, and responsive to the standards, values, and needs of those to be served; (2) To ensure investigations into claims of inappropriate conduct by sworn police officers are conducted in a manner that is fair, thorough, and accurate; (3) To provide review of police investigations into citizen complaints; (4) To ensure accountability with respect to complaints of officer misconduct; (5) To ensure public safety accountability, bolster confidence in police, increase and improve public cooperation, and make our community safer for everyone; (6) *To assist in identifying and analyzing trends in policing whose origins may be rooted in bias or other systematic phenomena, and upon discovery of these trends, to assist the City and Cedar Rapids Police Department (hereinafter referred to as the "CRPD") in developing solutions to ensure the fair and equitable treatment of citizens*; (7) To increase citizens' understanding of law enforcement policies, procedures, and operations through additional transparency created through the complaint and investigations review process; and (8) To create an additional conduit for communication between the CRPD and the Cedar Rapids community through outreach to community and law enforcement.

(Doc. 15-1, at 7) (emphasis added, as defendants emphasized this interest in their brief at Doc. 15-1, at 4-5).

Plaintiff, who is white, states that on two separate occasions, he applied for membership on the Board and was not selected. (Doc. 6-1, at 7). Plaintiff first applied at an unspecified time while Mayor Brad Hart was in office, and he was not chosen. (*Id.*). Upon encountering Mayor Hart at a function, plaintiff asked the mayor why plaintiff was not chosen for the Board, to which Mayor Hart allegedly responded that there were "only a few spots for the general public." (*Id.*). Plaintiff understood Mayor Hart's statement to mean that plaintiff was not considered for the five positions reserved for People of Color because plaintiff is white. (*Id.*). Plaintiff then applied a second time

in January 2022 when two vacancies opened but was not chosen because Mayor O'Donnell believed plaintiff had no experience working with or volunteering with organizations who serve underserved populations.[1]  (*Id.*, at 7-8).

On September 6, 2022, plaintiff filed a Motion for Preliminary Injunction.  (Doc. 6).  Plaintiff seeks an injunction only for the ordinance provision ("the Provision") requiring a threshold number of People of Color to serve as members, Section 74.02(A)(1)(a).  (Doc. 6).

## II.    *PRELIMINARY INJUNCTION STANDARD*

Plaintiff seeks to prevent the enforcement of a Cedar Rapids ordinance, Section 74.02(A)(1)(a), during the pendency of litigation.  (Doc. 6).  To prevail on a motion for a preliminary injunction, a party must establish: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other party litigants; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008).  The movant bears the burden of establishing the propriety of a preliminary injunction. *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original) (quoting 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995)).  "[T]he burden on the movant is heavy, in particular where . . . 'granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits.'"  *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th

---

[1] Plaintiff exchanged emails with a city employee when he was not selected for the Board in January 2022 about the reasons he was not selected.  (Doc. 6-1, at 7-8).

Cir. 1998) (second alteration in original) (quoting *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993)).

## III. ANALYSIS

As a preliminary matter, plaintiff asserts the balance of harms and the public interest merge when the defendant is a government actor (Doc. 6-1, at 13), but the Court will assess them separately under *Dataphase*, as that is the standard for a preliminary injunction.[2] *See Parents Defending Educ. v. Linn Mar Community School Dist.*, No. 22-CV-78 CJW-MAR, 2022 WL 4356109, at *6 n.1 (N.D. Iowa Sept. 20, 2022).

Because the absence of irreparable harm is fatal to a motion for preliminary injunction, the Court will first address the threat of irreparable harm. The Court will then discuss the remaining *Dataphase* factors. *See Dataphase*, 640 F.2d at 113, n.9.

### A. Irreparable Harm

The Court finds that plaintiff will suffer irreparable harm absent a preliminary injunction.

---

[2] Plaintiff states in his brief, "[t]he balance of the equities and the public interest factors 'merge when the Government is the party opposing the preliminary injunction.' *Nken v. Holder*, 556 U.S. 418, 435 (2009)." (Doc. 6-1, at 13). The Supreme Court did not say this. In the *Nken* decision, the Court discusses the functional overlap between the stay factors used in immigration cases and the factors applied to preliminary injunctions. *Nken v. Holder*, 556 U.S. 418, 428, 434 (2009) ("There is substantial overlap between these and the factors governing preliminary injunctions; not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined.") (internal citations omitted). The Court later discusses the stay factors of harm to the opposing party and the public interest, stating those factors "merge when the Government is the opposing party[,]" *id.*, at 435, as opposed to the "balance of equities" and "public interest" factors. The language plaintiff quotes came from a district court opinion and is not binding on this Court. *See Dorce v. Wolf*, 506 F. Supp. 3d 142, 145 n.4 (D. Mass. 2020). After researching the provenance of the purported Supreme Court quote from plaintiff's brief, the misquotation does not appear to be intentional or meant to misguide the Court. It is an example, however, of sloppy writing and research.

### 1. Arguments

Plaintiff argues that he has suffered irreparable harm because the deprivation of a constitutional right is always an irreparable injury. (Doc. 6-1, at 13). Defendants, however, argue plaintiff has not suffered irreparable harm, as none of the facts before the Court, in their telling, establish harm absent the injunction. (Doc. 15-1, at 5). Further, defendants argue that the harm is not irreparable because the Provision is being revised or removed entirely sometime soon. (*Id.*, at 5-6). Defendants also stated at oral argument (Doc. 17) that harm is not irreparable because plaintiff can apply for many other city boards other than the Board.

### 2. Applicable Law

"[T]o warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Wachovia Secs., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1044 (N.D. Iowa 2008) (citation omitted). The movant must show more than the mere possibility that irreparable harm will occur. *TrueNorth Co., L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 353 F. Supp. 3d 788, 801 (N.D. Iowa 2018). Rather, the movant must show it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Counc., Inc.*, 555 U.S. 7, 20 (2008). Thus, "[s]peculative harm does not support a preliminary injunction." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012); *see also Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ("[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996))). "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction[.]" *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see*

*also Dataphase*, 640 F.2d at 113, n.9 ("[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction.").

### 3. Analysis

Here, the Court finds irreparable harm favors an injunction. Plaintiff has shown a certain harm to his constitutional right of equal protection. The policy bars him from being considered for five positions on the Board solely because of his race. So long as the Provision exists in its challenged form, plaintiff (and anyone else who does not identify as a Person of Color) will never be considered for five of the nine positions on the Board. By depriving plaintiff of his constitutional right in an effort to create a majority minority on the Board, defendants' Provision has caused harm and will continue to while it remains in effect.

Defendants assert there is not irreparable harm because the Provision is being changed. This argument does not resolve the issue, however, because it does not address the current state of matters before the Court. At the time of this Memorandum and Order, the Provision—in its challenged form—is still in effect. Consequently, plaintiff is still subject to the Provision and is being treated differently in an inimical way because of his race.

Also, defendants' argument that they will amend the Provision has problems on both ends. First, if defendants intend to amend the Provision to address plaintiff's concerns, that is a tacit admission that it is unconstitutional as drafted. Second, if they intend to amend the Provision without addressing plaintiff's concern, any amendment defendants would make is irrelevant to the Court's analysis.

Thus, in the absence of injunction, plaintiff—and others who are not People of Color—will continue to be deprived of consideration for five of nine positions. Even

though there are three[3] other spots on the Board plaintiff might fill or spots on other boards, the possibility of being considered for or even obtaining one of those spots does not negate the harm done in not considering people for a spot because of their race. Harm here is clear and present and is in no way speculative.

The Court finds irreparable harm weighs in favor of an injunction.

### B.  Balance of Harms

The Court finds the balance of harms weighs in favor of granting a preliminary injunction.

#### 1.  Arguments

Plaintiff, in his motion, makes no argument for the balance of harms. Rather, plaintiff asserted that the balance of harms and public interest merge into one because defendants are government actors (Doc. 6-1, at 13), but as addressed earlier, the one sentence quotation used as plaintiff's argument here is not an actual Supreme Court quotation.

Defendants also assert no argument in their resistance on this factor. At oral argument (Doc. 17), defendants asserted belief time was better spent on the irreparable harm and likelihood of success factors, given those are its stronger arguments, and chose to not make a balance of harms argument.

#### 2.  Applicable Law

"[T]he balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public." *Wachovia Secs., L.L.C.*, 571 F. Supp.2d at 1047. It is not the same analysis as the irreparable harm analysis. *Id.* The balance of harms analysis considers several factors including the threat of each parties' rights that would result from

---

[3] The Court notes one of the spots is reserved for an attorney, which means this plaintiff is currently only eligible for three of the nine spots, not four.

granting or denying the injunction, the potential economic harm to the parties, and whether the defendant has taken voluntary remedial action. *Id.* "[A]n illusory harm to the movant will not outweigh any actual harm to the non-movant." *Frank N. Magid Assocs., Inc. v. Marrs*, No. 16-CV-198-LRR, 2017 WL 3091457, at *5 (N.D. Iowa Jan. 9, 2017) (quoting *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 976–77 (N.D. Iowa 2006)).

### 3. Analysis

The Court finds the balance of harms also weighs in favor of granting the preliminary injunction. Here, defendants will suffer no harm if a preliminary injunction is granted. If an opening becomes available, defendants can consider candidates' race—it just has to be considered and weighed with various other factors of qualifications and cannot be a threshold factor that makes or breaks a candidate. *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 318-20 (1978). Defendants can still fill positions, and an injunction will not undo defendants' previous selections or cause extra work in the selection process. The most qualified candidates may still be selected. People of Color may still be selected for the Board. Further, if defendants' claims that the Provision will no longer exist soon are accurate, then an injunction preventing its enforcement should not make much difference to them.

Absent an injunction, however, plaintiff will face harm. Plaintiff and other members of the public who are not People of Color will continue to not be considered each time they apply if the empty seat needs to be filled by a Person of Color to meet the minimum quota. Just as defendants claim it is speculative that a seat will open soon, it is equally speculative that one will not; we cannot know. Thus, the harm to plaintiff will continue absent injunction, though defendants will not be harmed in either case.

Thus, the balance of harms weighs in favor of granting a preliminary injunction.

*C.*      *Likelihood of Success on the Merits*

The Court finds the likelihood of success on the merits weighs in favor of an injunction.

     *1. Arguments*

Plaintiff argues it can show a likelihood of success on the merits because the Provision institutes a racial quota, and racial quotas applicable to any race must be evaluated under strict scrutiny. (Doc. 6-1, at 8-9). Further, plaintiff argues, the Provision cannot withstand such review because there is no compelling interest nor any showing that the Provision is narrowly tailored, as there is no evidence the interests can only be fulfilled through invidious discrimination. (*Id.*, at 9-13).

Defendants assert plaintiff cannot succeed on the merits because the Provision is not a race quota. (Doc 15-1, at 3). The Provision requirement that five members identify as People of Color is not a racial quota because a person can *identify as* some race without *being* that race, in their telling. (*Id.*, at 3-4). Thus, they say, there is no classification based on race. (*Id.*). Further, at oral argument (Doc. 17), defendants stated plaintiff lacks standing to bring suit, given plaintiff has provided no evidence of not being selected because of his race. They argue the application requires self-identification of race, so there is no racial discrimination. Defendants seem to be suggesting that plaintiff can simply evade the quota by lying and claiming that he identifies as a Person of Color.

At oral argument, for the first time, defendants suggested plaintiff lacks standing. In their supplemental briefing, defendants argue plaintiff lacks standing because he cannot show any causation or redress and was not selected for the Board in 2022 because he was not experienced working with underrepresented populations. (Doc. 19, at 2-3).

     *2. Applicable Law*

The Eighth Circuit has rejected the notion that the phrase "probability of success on the merits" should be read to mean that a movant can "prove a greater than fifty

[percent] likelihood that he will prevail on the merits." *Dataphase Sys., Inc.*, 640 F.2d at 113. More recently, the Eighth Circuit has explained that in cases seeking to enjoin "government action based on presumptively reasoned democratic processes," courts must "make a threshold finding that a party is likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008). If the movant succeeds in showing a likelihood of prevailing on the merits, the court should weigh the other *Dataphase* factors. *Id.*

To show a likelihood of success on the merits, a plaintiff must have standing. Standing requires 1) an injury in fact that is concrete and particularized, actual or imminent; 2) that the injury in fact was likely caused by the defendant; and 3) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The burden to show all three elements of standing lies with the plaintiff. *Id.*, at 2208. Further, causation requires the injury plaintiff has experienced to be fairly traceable to the alleged conduct. *West Virginia v. EPA*, 142 S. Ct. 2587, 2606 (2022). Finally, redress asks whether a favorable ruling would redress—remedy or compensate— the relevant injury caused by defendant. *Id.*

As for the merits of this claim, plaintiff must show a violation of his equal protection rights. The Equal Protection Clause of the United States Constitution guarantees equal treatment under the law, protecting citizens from invidious discrimination based on their individual characteristics such as gender, socioeconomic status, and race. Upon allegations of equal protection violations, government actions that discriminate based on certain characteristics, such as the immutable characteristic of race, are analyzed using strict scrutiny. *Regents of the Univ. of Cal. V. Bakke*, 438 U.S. 265, 290-91 (1978). Strict scrutiny analyzes whether the government action or law infringing on the plaintiff's right is being used to further a compelling interest and whether such an

13

interest is furthered using narrowly tailored means. *Id.*, at 299. The law need not be narrowly tailored to the least restrictive means of furthering the compelling interest, but the law must further an interest that would be achieved less effectively without the law. *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989). Further, the law cannot sweep more broadly than necessary to further the government's compelling interest. *Id.*, at 801; *Barr v. Am. Ass'n of Pol. Cultnats, Inc.*, 140 S.Ct. 2335, 2362-63 (2020).

### 3. Analysis

As a preliminary matter, the Court will address plaintiff's standing to succeed on the merits, then move into its analysis of the Fourteenth Amendment equal protection claim. The Court finds both standing to bring suit and that plaintiff has recited facts showing a cognizable equal protection claim rendering plaintiff likely to succeed on the merits of his claim.

### a. Standing

Here, the Court finds the likelihood of success on the merits tips the scales in favor of a preliminary injunction. Plaintiff must have standing to bring a claim if he is to succeed on the merits. Plaintiff sufficiently pleads facts to allege an injury at this stage, not because he was not picked for the Board but because he could not and cannot even be considered for five of the seats. *Bakke*, 438 U.S. at 281 n.14 (stating the injury in fact in a race quota scenario comes from the inability to compete for all positions based on race, not from not being selected); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Thus, because plaintiff has not been afforded equal opportunity to be considered for five positions based on his race, the Court finds an injury.

Plaintiff also alleges sufficient facts of causation. Again, the inquiry is not whether the Provision caused harm because plaintiff was not selected but rather whether the Provision caused defendants to disregard plaintiff as a candidate for five positions because

of his race. Plaintiff sufficiently alleges facts indicating that he was not considered for five seats on the Board because of the Provision requirement that five members identify as People of Color in conjunction with his identification as white. (Doc. 6-2, at 2). ("The overall membership of the CRB will include a minimum of five (5) voting members who identify as people of color.").

It matters not that plaintiff can self-identify as a race on the application; the suggestion that an applicant should just lie to get around a race requirement is not only startling, but it also does not cure the fact that anyone self-identifying as white is not considered for the Board. Thus, plaintiff has shown a likelihood of injury.

There are also facts showing that both mayors who served during the period plaintiff applied to the Board provided legitimate reasons to not select plaintiff: having limited seat numbers for the general population and plaintiff's lack of qualifications. That explanation, however, only applies to the three seats that are not reserved for a Person of Color and the attorney seat. Plaintiff was not considered for five of the seats, though he could have been equally or more qualified than others who were selected for the Board but was disregarded because of his race. Regardless of qualification or the presence or absence of proof that plaintiff would have been selected absent the Provision, the Provision has and will cause injury when plaintiff and others like him cannot even be considered for most of the spots on the Board. *See Bakke*, 438 U.S. at 280 n.14. Thus, the inability to be considered for five positions based on race under the Provision has caused plaintiff's injury.

The Court finds that plaintiff has shown that a judicial decision in his favor would redress the injury caused by the Provision. The Court cannot take defendants at their word that the Provision will be revised or done away with, especially when defendants

have not clarified the exact revisions being made.[4]  However, the argument defendants might revise the Provision does not persuade the Court because at issue is the Provision in its current state.  Nor is it persuasive that there are currently no available seats; there are facts here showing two seats became unexpectedly available due to absences in the past.  If seats on the Board became available while the Provision is in place, plaintiff could not be considered if there were fewer than five members identifying as People of Color on the Board.  Without the Provision, he could at least be considered for those spots.  Thus, the facts provided here are enough for the Court to conclude by substantial likelihood that a favorable decision would redress plaintiff's injury.

For these reasons, the Court finds plaintiff has standing required to succeed on the merits.

### b.  Equal Protection Violation

Plaintiff has demonstrated a likelihood of prevailing on the merits of his claim that the Provision violates the Fourteenth Amendment of the United States Constitution.  Racial quotas that do not serve compelling interests—which may, in some scenarios, include combatting evidenced past discrimination—through narrowly tailored means are unconstitutional, as they deny equal protection to people having different immutable racial characteristics than those the quota favors.  *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003)[5]; *see Bakke*, 438 U.S. at 301-02.

---

[4] Defendants state the Provision is being revised but never say how or in what ways it will be revised.  Most specifically, defendant asserts that the Provision will no longer exist when the next general population seat becomes available (Doc. 15, at 5-6), but it would be a generous interpretation from that information for the Court to assume the Provision will be changed in a way that the race identification quota requirement is stripped entirely from the ordinance.  The addition of a comma or a period would technically render a Provision to no longer exist, at least in its present state.  The Court will not assume what defendants mean in saying the Provision will not exist.

[5] *Grutter* found diversity to be a compelling interest in certain educational circumstances but has not done so in a situation such as here.  539 U.S. at 738, 742.

Here, the facts indicate a likelihood that plaintiff will succeed on the merits. Plaintiff has presented facts indicating the Provision is a racial quota. Defendants assert the Provision requirement that five members identify as People of Color is not a racial quota because a person can *identify as* some race without *being* that race, in their telling. The Court finds this to be a distinction without difference under the Fourteenth Amendment. Neither party has cited any caselaw to support or oppose the proposition that these terms are synonyms when analyzed for purposes of constitutional law. The Court of Appeals for the Eighth Circuit, however, has found a policy using "identifies as" language to differentiate based on race. *See E.L. by White v. Voluntary Interdistrict Choice Corp.*, 864 F.3d 932, 936 (8th Cir. 2017) ("But Gateway's policy also differentiates based on race: 'If address is not found on the city site or the zip code is not listed above and the student identifies as African-American, you cannot enroll the student.'"). The Court discussed this case at oral argument, though neither party was familiar, leading the Court to order supplemental case briefing. In his supplemental briefing, plaintiff agreed with the Court's interpretation of *E.L.* (Doc. 18). Defendants, however, argue that *E.L.* does not bind the Court as to a standard of review to apply to the Provision. (Doc. 19). The Court did not suggest at oral argument that the case governed the standard of review; it stated the Eighth Circuit Court of Appeals had identified racial discrimination based on identical language as here. Parties here present no difference between the use of "identify as" or "be" in the Provision, and defendants' semantics argument cannot save the Provision from scrutiny.

The Provision requires a certain number of people from various races to sit on the Board, and, as a result, excludes white people from even being considered for five of the seats. The requirement that a certain number of seats be preserved for a particular group is a quota. Defining the group by race is a racial quota. Thus, the Court finds the Provision is a racial quota subject to strict scrutiny.

17

Applying strict scrutiny, the Court finds the facts at hand provide a likelihood the interests cited by defendants are compelling. Police have the important task of monitoring the community and keeping its citizens safe, even those they suspect of breaking the law. They arrive on scenes that may require them to follow specific procedures or make difficult decisions that could impact someone's liberty. Officers often must act with limited information and make split-second decisions in stressful situations. Sometimes, as occurs to workers in every occupation, officers have biases, make mistakes or behave inappropriately or dangerously in situations and must be corrected or terminated. As such, it is a compelling government interest to ensure arrests are being made in accordance with the Constitution and that police conduct is appropriate and race-neutral. Thus, the Court finds the interests listed in the Provision (Doc. 15-1, at 7) are compelling, as they seek to ensure arrests occur within constitutional limits and that any potentially incorrect police-citizen interactions are reviewed to determine whether they were actually incorrect or inappropriate.

The Court finds these interests are not, however, being served through narrowly tailored means, based on the facts at this stage. Though the means need not be the narrowest possible to serve the public interest, the Provision is not narrow at all. There is no evidence having a specific proportion of People of Color on every Board will serve those interests more than would a composition of random race proportions.[6]  Racial

---

[6] Nor do defendants provide or cite evidence of past discrimination that the Provision seeks to remedy somehow through the quota. This, in some factual instances, may support a racial quota but that was neither raised nor evidenced here. *See, e.g.*, *Kohlbek v. City of Omaha*, 447 F.3d 552, 556-57 (8th Cir. 2006) (discussing remedying past discrimination as a compelling purpose when evidence thereof exists but finding the means of accomplishing that purpose as not narrowly tailored). For example, if the City of Cedar Rapids had a police oversight board that existed for years but never had as members People of Color, then an argument could be made that a quota would be necessary to address past discrimination in the constitution of the board. That, however, is not the case here.

diversity is important.  The ordinance, however, already considers a need to select Board members based on culture, gender, geographic diversity, and other factors which presumably include race.  That is constitutionally permissible.  *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 318-20 (1978) ("No such facial infirmity exists in an admissions program where race or ethnic background is simply one element—to be weighed fairly against other elements—in the selection process.").  At this stage, nothing suggests the goals of the ordinance would not be accomplished by just those factors without discounting people based on race once the limit for white members is met.

Further, the requirement is overbroad because it prevents candidates who do not identify as People of Color from serving in five of the positions even if they are diverse, qualified, and can provide the unbiased and objective review of complaints defendants seek.  Defendants argued (Doc. 17) that plaintiff does not have standing because he does not have to be selected, and the goal of the ordinance is diversity, so the Provision tailors to diversity by requiring five People of Color creating a majority of minorities.  That argument is illogical, however, as nothing in the Provision or larger ordinance requires any white person serve on the Board, which surely would contribute just as much to diversity as would any other race.

Here, the ordinance engages in a bias in the same manner it seeks to prevent in law enforcement.  The ordinance seeks to "identify[ ] and analyz[e] trends in policing whose origins may be rooted in bias or other systematic phenomena" and address those biases.  (Doc. 15-1, at 7).  Yet, the ordinance assumes that a person with white skin is different from a Person of Color and unable to identify and address racial bias in policing like a Person of Color or cares less about such issues because the person has white skin.  This reflects a belief itself rooted in bias that presumes that how one thinks, the values one has, the sense of justice one pursues, depends on the color of one's skin.

Further, the city need not set out an additional race quota to assemble a group that conducts unbiased review of complaints. Under the ordinance, race and various diverse qualities are already being considered and should lead to a diverse and unbiased body, just as defendants desire. (Doc. 6-2, at 2) ("Members of the CRB will serve without compensation, and be chosen to broadly represent the diversity of the City by way of, including but not limited to, cultural, gender, and geographic diversity."). As it stands, the Provision's additional race quota is superfluous, as there is no evidence or reason to believe that the government's claimed interest here cannot be met in the absence of the Provision; these broad-sweeping means are not narrowly tailored. Thus, there exists a likelihood that plaintiff would succeed on the merits of his equal protection claim.

The Court understands defendants' difficult position. There has been great social upheaval by the populace about perceived racial bias in policing. There is a call to respond through political action at every level of government. These issues involving perceived racial bias must be addressed. By adopting the ordinance, elected officials are attempting to address concerns raised by citizens. Nevertheless, if the city addresses these issues involving racial bias by adopting policies similar to the Provision's additional racial quota, all that does is establish and enforce—and likely in an unconstitutional way—more racial biases on an issue that calls for unity.

Thus, the Court finds likelihood of success on the merits weighs in favor of granting a preliminary injunction.

### D. Public Interest

The Court finds that the public interest tips in favor of granting the preliminary injunction.

#### 1. Arguments

Plaintiff asserts that it is always in the public interest to prevent constitutional rights violations. (Doc. 6-1, at 13).

Defendants provided no argument in the resistance for this factor. At oral argument (Doc. 17), defendants stated they did not wish to make argument on the public interest, given its weaknesses.

### 2. Applicable Law

This Court has noted as follows:

> The "public interest" factor frequently invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious. However, there are more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve [and] a preference for enjoining inequitable conduct[.]

*Prudential Ins.*, 728 F. Supp. 2d at 1032 (internal citations omitted).

### 3. Analysis

The Court finds the public interest weighs in favor of a preliminary injunction.

Here, the conduct in question is inequitable. It is in the public interest to expose all people—white, Black, Asian, Native American, or any other race—to the issues occurring in the community for public awareness and because diversity on community boards is good for the community and discourages inherent biases. The Provision, however, invidiously discriminates against white citizens in favor of others for arbitrary and unsupported racial reasons. It is both harmful and morally wrong to treat anyone as lesser or afford them less opportunity solely on the basis of an immutable characteristic such as skin color—Black, white, Hispanic, or any other race. In addition, there are no facts that show white citizens are unaffected by police brutality and misconduct, are not concerned about the issue, or are unqualified or biased and cannot review complaints. The Provision reflects an inherent belief that only People of Color care about the issues facing People of Color and that white people do not care about People of Color. That is a presumption based on bias.

Case 1:22-cv-00066-CJW-KEM   Document 20   Filed 10/13/22   Page 21 of 22

Further, the interests listed in the ordinance can be served absent the Provision. Diverse people—racially and otherwise—may still serve on the Board absent the Provision or similar provisions, and unbiased people may still review police conduct and determine when inappropriate events have occurred. Defendants can still consider a variety of factors, including race if weighed equally against other factors, to select the Board members, and thus, there is no cost or injury to them by granting an injunction.

Problematically, though the Provision's stated purpose is to root out biases, it also engages in inherent bias that tautologically presumes white people cannot possibly ever see things the way People of Color can, and white people cannot possibly have an interest in justice for People of Color. This presumption is based only on the color of one's skin. It contradicts the Provision's purpose to eliminate presumptions in policing based on the color of skin. Not only is this a sad presumption, it is so vehemently incorrect.

Thus, the public interest tips in favor of granting the injunction.

## IV.    CONCLUSION

For these reasons stated above, the Court **grants** plaintiff's motion for a preliminary injunction. Defendants are barred from enforcement of the Cedar Rapids Municipal Code Section 74.02(A)(1)(a) during the pendency of this litigation.

**IT IS SO ORDERED** this 13th day of October, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

22